Joseph YOUNG, Plaintiff-Appellant,

v.

James RABIDEAU and Stephen Washington, Respondents-Appellees.

No. 84–2952.

United States Court of Appeals,
Seventh Circuit.

Argued Dec. 12, 1986.

Decided June 1, 1987.

John McCarroll (Law Student), Notre Dame Law School, Notre Dame, Ind., for plaintiff-appellant.

Thomas A. Ioppolo, Asst. Atty. Gen. of Ill., Chicago, Ill., for respondents-appellees.

Before CUMMINGS and FLAUM, Circuit Judges, and GRANT, Senior District Judge.[*]

GRANT, Senior District Judge.

Plaintiff-Appellant Joseph Young filed a civil rights action under 42 U.S.C. § 1983 against two correctional officers, alleging use of excessive force against him and confinement in an uninhabitable control cell in violation of the Eighth Amendment standard of cruel and unusual punishment. The jury returned a verdict in favor of the defendants, Sergeant James Rabideau and Officer Stephen Washington, and the court entered judgment on the verdict on October 10, 1984. After his motion for a new trial was denied, Young filed this appeal on November 13, 1984, alleging improper admission of testimony about his disciplinary record and improper exclusion of testimony concerning prison rules. We affirm.

### I.

Joseph Young is an inmate at Stateville Correctional Center in Joliet, Illinois. The allegations of his § 1983 complaint are based upon a dispute and altercation that occurred on February 13, 1981, between the prisoner Young and the guard Washington on the way to the exercise yard.

Their versions of the situation were quite different.

Young and three other inmates, each in handcuffs, were being escorted by Washington to the exercise area. Washington claimed that Young had refused to go into the yard, and that Washington had told him to go either into the yard or back to his cell. The guard then removed a chain from the yard gate to unlock it. Young testified that he became frightened by Washington's swinging of the chain, grabbed the chain to protect himself and then dropped it. Washington testified that Young had put his finger in Washington's face to intimidate the guard and had grabbed the chain, swinging it toward the officer's face. Each accused the other of the abusive language, provocative actions and initial attack that actually caused the fight. As a result of the scuffle, Young's left eye and wrists were cut.

The prisoner and corrections officer went to Sergeant Rabideau's desk. After temporary placement in a shower cell, Young was taken for medical treatment. Rabideau then placed the inmate in a control cell, where he remained from February 13 until the morning of February 17, 1981. Sergeant Rabideau was responsible for the prison's control cells.

Testimony at trial concerning the condition of the control cell was conflicting. According to Young's description, the cell was filthy and unheated; the sink, toilet, and light did not function; and he was not provided with sheets or toiletries. Rabideau testified that he did not recall the condition of the control cell on that date, but that it was standard practice for him to make rounds at least once a day to inspect the condition of empty cells. He stated that a cell was cleaned and equipped with sheets, blankets, soap and hygiene essentials before an inmate was placed in it, and was taken out of operation if major repairs were needed.

---

[*] The Honorable Robert A. Grant, Senior District Judge for the Northern District of Indiana, is sitting by designation.

The jury found the evidence and testimony of the correctional officers more credible, and returned a verdict in their favor.

At trial, the court refused to admit Young's direct testimony concerning prison regulations about length of detention in a control cell, and allowed defense counsel to cross-examine him concerning his prior disciplinary record in the penitentiary. In this appeal, Young has raised two issues regarding these evidentiary determinations: whether it was reversible error for the district court to prevent Young from testifying that his confinement in a control cell for more than seventy-two hours violated prison rules, and whether evidence of his prior disciplinary violations was inadmissible under Rule 404(b) of the Federal Rules of Evidence.

## II.

During his direct testimony on the condition of the control cell, Young stated that he had been held in that cell for more than seventy-two hours. When his lawyer asked the significance of that time period, he started to explain: "According to prison rules, they can't keep...." The objection to that statement was sustained. Appellant now claims that the court's disallowance of that testimony was reversible error.

In his appellate brief Young asserted that evidence of a prison rule about confinement in a control cell would have established Sergeant Rabideau's personal responsibility for Young's deprivation of his constitutional rights under the eighth amendment and would have helped to negate Rabideau's claim of immunity, a defense available to him as a state prison official under § 1983. The record indicates that appellant's counsel did not attempt either to explain the relevance of that evidence, when the objection was made, or to admit the evidence at another point in the trial.[1] At oral argument appellant's counsel apparently recognized the futility of

pursuing this point, for he argued only the second issue.

First, let us make clear that, on procedural grounds, defendants' objection was permissible. Young's complaint bases its constitutional claim of cruel and unusual punishment on the uninhabitable conditions of the cell rather than on any violation of the prison's regulations. It was proper for defendants in this suit to object to evidence that has no basis in the pleadings. Collateral evidence is excluded by Fed.R.Evid. 403. *United States v. Buljubasic,* 808 F.2d 1260, 1268 (7th Cir.1987).

Second, we note that the appellant had the opportunity to include evidence of prison rules before or during the trial. However, Young made no motion before trial to amend his complaint to conform the pleadings to the evidence he intended to present. Nor did he request an amendment to his pleadings at the time that the submitted evidence on the prison rule was objected to at trial. Pursuant to Rule 15(b) of the Federal Rules of Civil Procedure, the court could have considered an amendment at that time.

> If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that the admission of such evidence would prejudice him in maintaining his action or defense upon the merits. The court may grant a continuance to enable the objecting party to meet such evidence.

Now that the trial is over, appellant challenges the trial court's decision to exclude the evidence, and we must determine whether the issue can be considered on appeal.

■ The Federal Rules of Evidence clearly delineate the procedure to be followed in order to preserve a point for appeal, and the procedure was not followed

---

1. The appellant did not attempt to admit this evidence either through the more appropriate witness, the sergeant responsible for the control cell, or through submission of the best evidence, the prison regulation itself.

by appellant. Rule 103(a)(2) requires that "error may not be predicated upon a ruling which ... excludes evidence unless a substantial right of the party is affected," and "the substance of the evidence was made known to the court by offer or was apparent from the context within which questions were asked."

An offer of proof is needed "so that the reviewing court could determine whether any error affected [plaintiff's] substantial rights." *Fidelity and Deposit Co. of Md. v. Reliance Federal Savings and Loan Ass'n.*, 795 F.2d 42, 44 (7th Cir.1986). The offer need not be formal, nor the error precisely specified. *United States v. Sweiss*, 800 F.2d 684, 688 (7th Cir.1986), *reh'g granted*, 812 F.2d 1023 (7th Cir.1987). However, appellant needed to make the appropriate arguments to the district court that he now makes on appeal in order to alert the trial court to the issue. *Id.*

Appellant has failed to satisfy any of the Rule 103(a) criteria. There is no indication from the record that Young responded to the court's exclusion of his testimony with any offer of proof. And his statement was so abbreviated that the substance of his evidence is not apparent from the context. No showing was made that the exclusion of this evidence seriously hindered Young's case or adversely affected his substantial rights. Without more development of the substance of the proposed evidence or an offering of the prison rule in evidence, appellant has not made an appropriate offer of proof that would have preserved the point on appeal.

Although neither a timely objection nor offer of proof was made, the district court's exclusion of Young's testimony about a prison rule could be considered "plain error." Pursuant to Rule 103(d), we can take notice "of plain errors affecting substantial rights although they were not brought to the attention of the court."

■ A party challenging the exclusion of evidence has the burden of demonstrating

that his substantial rights have been prejudiced by the exclusion. *Ellis v. City of Chicago*, 667 F.2d 606, 611 (7th Cir.1981). In both civil rights and criminal cases, the plain-error doctrine[2] allows reversal in spite of the lack of an objection at trial if "the trial court's admission [or exclusion] of this evidence was a conspicuous error that was so likely to have changed the result that a retrial is necessary to avoid a miscarriage of justice." *United States v. Brimberry*, 744 F.2d 580, 585 (7th Cir.1984) (citing *United States v. Silverstein*, 732 F.2d 1338, 1348 (7th Cir.1984), *cert. denied*, 469 U.S. 1111, 105 S.Ct. 792, 83 L.Ed.2d 785 (1985)). *See also United States v. Serola*, 767 F.2d 364, 372 (7th Cir.1985); *Wilson v. Attaway*, 757 F.2d 1227, 1242 (11th Cir.), *reh'g denied*, 764 F.2d 1411 (11th Cir.1985).

■ The exclusion of Young's testimony concerning a prison regulation is not likely to have changed the result of the trial. In any case, the appellant did not meet his burden of demonstrating that his substantial rights were prejudiced by the exclusion, and we cannot find that there was a miscarriage of justice in that evidentiary ruling. Although evidence of the prison rule might have added some cumulative support to the constitutional claim, its exclusion does not rise to the level of plain error warranting us to overlook the failure of appellant's counsel to preserve the point by timely objection. Accordingly, we need not consider whether the district court erred in disallowing evidence of the prison regulations.

### III.

Young testified on direct examination that Washington had started to swing the chain and that he had grabbed the chain in self-defense: "Well, my reflex, I just grabbed the chain to protect myself. I didn't snatch it from him or anything, I just grabbed the chain." Young also testified, on cross-examination, that his pointing of a

**2.** In *United States v. Young*, 470 U.S. 1, 105 S.Ct. 1038, 84 L.Ed.2d 1 (1985), the Supreme Court considered the plain-error doctrine of Federal Rule of Criminal Procedure 52(b). It cautioned

reviewing courts against using the doctrine to weigh alleged errors not meriting appellate review absent timely objection. *Id.* at 16, 105 S.Ct. at 1047.

finger in Washington's face was accidental rather than intentional.

The court allowed defendants, on cross-examination, to ask Young a series of questions about his prior record. The court did not allow admission of Young's disciplinary card or a reading of specific instances of disciplinary reports on the card. It permitted general questions about past discipline rather than questions about specific prior incidents. Defendants insisted that the jury did not learn the full extent of Young's record. Young responded to the questions on cross-examination by denying that he had engaged in prior assaults. He admitted previous discipline but stated that it was "retaliatory."

Appellant contends that the admission of evidence of his record was intended to establish his violent nature by showing that he acted in conformity with prior bad acts. Defendants argue that Young opened the door to evidence of his prior acts by testifying that he had grabbed the chain by "reflex" and that he had pointed a finger in Washington's face by "accident." They offer three purposes for admitting evidence of his past acts: to indicate Young's intent in so acting; Young's bias, hostility, and dislike of correctional officers and of institutional authority; and the absence of mistake or accident.

Rule 404(b) of the Federal Rules of Evidence governs admissibility of evidence of other crimes, wrongs, or acts. It forbids evidence of an individual's character to be admitted at trial, civil as well as criminal, for the purpose of proving "that he acted in conformity therewith" on a particular occasion. However, the rule permits evidence of wrongful acts to be introduced for specific purposes: "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

Rule 403 of the Federal Rules of Evidence is inextricably related to the 404(b) determination of whether evidence of other wrongs may be offered. That rule provides that evidence may be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice." Evidence is considered unfairly prejudicial, not merely because it damages the opposing party's case, but because its admission makes it likely that the jury will be induced to decide the case on an improper basis, commonly an emotional one, rather than on the evidence presented on the crime charged. *United States v. Falco*, 727 F.2d 659, 662 (7th Cir.1984). "Relevant evidence is inherently prejudicial; but it is only *unfair* prejudice, *substantially* outweighing probative value, which permits exclusion of relevant matter under Rule 403." *United States v. Medina*, 755 F.2d 1269, 1274 (7th Cir.1985) (quoting *United States v. McRae*, 593 F.2d 700, 707 (5th Cir.), *cert. denied*, 444 U.S. 862, 100 S.Ct. 128, 62 L.Ed.2d 83 (1979) (emphasis in original)).

A trial court possesses broad discretion in determining the relevance of proffered evidence and in balancing its probative value and unfair prejudice. *United States v. Laughlin*, 772 F.2d 1382, 1392 (7th Cir. 1985). The decision of the district judge will be accorded "great deference," *Medina*, 755 F.2d at 1274, because his first-hand exposure to all the evidence and his familiarity with the course of the trial proceedings are the best qualifications available for balancing the value of the evidence in its proper context. *United States v. Levy*, 741 F.2d 915, 924 (7th Cir.), *cert. denied*, 469 U.S. 1021, 105 S.Ct. 440, 83 L.Ed.2d 366 (1984). "When the same evidence has legitimate and forbidden uses, when the introduction is valuable yet dangerous, the district judge has great discretion." *United States v. Beasley*, 809 F.2d 1273, 1278 (7th Cir.1987). The lower court's holding will not be disturbed on appeal absent a clear showing that the court abused its discretion. *United States v. Rovetuso*, 768 F.2d 809, 815 (7th Cir.1985), *cert. denied*, — U.S. ——, 106 S.Ct. 838, 88 L.Ed.2d 809 (1986); *United States v. Green*, 735 F.2d 1018, 1026 (7th Cir.1984).

It is our role to determine whether where was a "flaw in the process" rather than in the result, "whether the district judge and the parties took the right things into account." *Beasley*, 809 F.2d at 1279.

[T]here must be a principled exercise of discretion. The district judge must both identify the exception that applies to the evidence in question and evaluate whether the evidence, although relevant and within the exception, is sufficiently probative to make tolerable the risk that jurors will act on the basis of emotion or an inference via the blackening of the defendant's character. Discretion, when exercised, will rarely be disturbed.

*Id.*

This court established a four-part test for the admissibility of evidence of prior misconduct in *United States v. Shackleford,* 738 F.2d 776, 779 (7th Cir.1984):

Our decisions indicate that, under the dictates of Rules 404(b) and 403, admission of evidence of prior or subsequent acts will be approved if (1) the evidence is directed toward establishing a matter in issue other than the defendant's propensity to commit the crime charged, (2) the evidence shows that the other act is similar enough and close enough in time to be relevant to the matter in issue ..., (3) the evidence is clear and convincing, and (4) the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice.

In analyzing whether the trial court abused its discretion in admitting evidence of Young's prior disciplinary record, we must therefore first consider whether that evidence was directed toward establishing a matter in issue other than his propensity for prison violence.

### A. *Bias*

■ Defendants argue that Young's discipline history reflects his "bias" against authority (a category not listed in Rule 404(b)), and is relevant to explain his hostility toward correctional officers.

We have recognized, in criminal cases, that evidence may be admissible to support a theory of bias as long as it does not become inadmissible evidence of his character. *United States v. Rovetuso,* 768 F.2d at 817; *United States v. DeLeon,* 498 F.2d 1327 (7th Cir.1974).[3] A trial judge may admit limited extrinsic evidence for the purpose of showing the bias or interest of a witness as long as that bias is not a collateral issue. However, the court must admit such evidence discreetly, always balancing the probative value and the prejudicial effect. *United States v. Battaglia,* 394 F.2d 304, 314 (7th Cir.1968), *cert. denied,* 401 U.S. 924, 91 S.Ct. 868, 27 L.Ed.2d 828 (1971). In *United States v. Marzano,* 537 F.2d 257 (7th Cir.1976), *cert. denied,* 429 U.S. 1038, 97 S.Ct. 734, 50 L.Ed.2d 749 (1977), this court acknowledged the conflict in courts concerning admissibility of evidence showing bias, *id.* at 265, and affirmed the limited inclusion of bias testimony because the trial court used a voir dire procedure to substantiate various allegations before allowing possibly prejudicial material to be brought before the jury. *Id.* at 266.

Bias is an evidentiary device used to impeach the testimony of a witness and thus to affect the weight of his testimony. Bias is associated most often with criminal trials and is used against a witness rather than a party. *See* IIIA *Wigmore on Evidence* §§ 943–948. In contrast, this is a civil rights case, not a criminal one. The party alleged to be biased is the plaintiff, not a witness who might be partial or hostile to one of the parties. The traditional use of bias is simply not an appropriate concept to apply to this circumstance.

Perhaps it is more proper to categorize the admissibility of Young's disciplinary

---

**3.** In *DeLeon,* we upheld a district court's allowance of a restricted cross-examination revealing that a witness might falsely testify favorably to the Government from fear of prosecution. The district court narrowly allowed the witness to testify to specific information that was relevant to a theory of bias: his prior criminal act, the government's knowledge of the witness's illegal actions, its lack of prosecution for that act, and its promise not to prosecute. *DeLeon,* 498 F.2d at 1332–33. This evidence was relevant to show the witness's bias, but any further evidence of surrounding circumstances would only have gone to the inadmissible purpose of proving bad character. We found the district court's narrow admission of that testimony correct, and followed that test again in *United States v. Rovetuso,* 768 F.2d 809, 817 (7th Cir.1985) by disallowing extrinsic evidence to establish bias too broadly.

record as a new Rule 404(b) exception for the purposes of establishing bias. Rule 404(b) does not exhaust the purposes for which evidence of other wrongs or acts may be admitted. *United States v. Boroni,* 758 F.2d 222, 224 (7th Cir.1985) (citing *United States v. Jordan,* 722 F.2d 353, 356 (7th Cir.1983)). Although this court has recognized that the list of exceptions is illustrative rather than exclusive, *Beasley,* 809 F.2d at 1279, it has been careful not to broaden the exceptions to Rule 404(b) beyond their intended scope. In *Beasley,* for example, we found that the rule did not list "pattern" as an exception because pattern, alone, creates "the forbidden inference that one who violated the ... laws on one occasion must have violated them on the occasion charged." *Id.* at 1278. Thus, "pattern" cannot, by itself or even coupled with temporal proximity of acts, justify admissibility of evidence. Nevertheless, we noted that the patterns of a person's acts "may *show* identity, intent, plan, absence of mistake, or one of the other listed grounds." *Id.*[4]

We believe that bias, like pattern, may show intent or another Rule 404(b) ground, but that it is more likely to prove bad character or a propensity toward violent behavior by inferring that the prisoner acted in conformity with his prior bad acts. And in the case herein, the evidence of appellant's prior disciplinary record fits neatly into either of two established categories of the rule; there is no reason to create a new "bias" exception. We therefore will not expand Rule 404(b) to include "bias" as a category justifying the admissibility of prior bad acts evidence.

### B. *Intent*

▮ Defendants urge that the evidence of the inmate's prior misconduct was relevant to show Young's intent, and was introduced in order to establish that his actions were intended to provoke the officer and to start the fight.

4. In *Beasley,* intent was an issue: the intent for which Beasley bought drugs. This court found that the district judge did not sufficiently consider the prejudicial effect of the admitted evi-

Evidence of other bad acts is admissible to establish specific intent when intent is an essential element of the crime charged and when the other requirements of Rules 404(b) and 403 are satisfied. *United States v. Arnold,* 773 F.2d 823, 832 (7th Cir.1985); *United States v. Chaimson,* 760 F.2d 798, 805 (7th Cir.1985). Such evidence is also allowed "when intent is only a formal issue that can be inferred from the act" if the issue of intent is raised as a defense by the party whose actions are in question. *United States v. Shackleford,* 738 F.2d at 781.

The "intent" exception to Rule 404(b) may also be used, in a broader sense, to admit prior crimes "because the repetition of the crime is itself circumstantial proof of intent, not direct proof of a propensity to commit crime." *United States v. Fountain,* 768 F.2d 790, 805 (7th Cir.1985) (Swygert, J., concurring in part and dissenting in part), *cert. denied,* —— U.S. ——, 106 S.Ct. 1647, 90 L.Ed.2d 191. The Fifth Circuit used this approach in finding that the performance evaluation report on a deputy sheriff was admissible in a § 1983 action because its record of loss of temper and consequential intentional hostility toward others on earlier occasions tended to show that a similar intent to do harm was present in his conduct toward this defendant. *Carson v. Polley,* 689 F.2d 562, 572–73 (5th Cir.1982). Similarly, such a record of loss of temper and hostility was evident from the disciplinary reports of the appellant herein. In allowing general questions concerning Young's prior disciplinary history, but not admitting the record itself (which was very long and detailed, and could easily have aroused the emotions of the jurors), the district court was more cautious than the *Carson* court.

Admission of past misconduct is proper when presented in rebuttal to appellant's main defense that he did not intend to poke the prison guard in the face or to snatch the chain out of his hand. *See United States v. Brunson,* 657 F.2d 110, 115 (7th

dence of past drug purchases in impugning the defendant's character, and therefore reversed its decision. 809 F.2d at 1279, 1281.

Cir.1981), *cert. denied,* 454 U.S. 1151, 102 S.Ct. 1019, 71 L.Ed.2d 306 (1982). We find no abuse of discretion in the district court judge's determination to allow limited cross-examination questioning of Young's prior bad acts.

### C. *Absence of mistake or accident*

■ The "absence of mistake or accident" exception to Rule 404(b) is a close corollary of the "intent" exception: evidence of prior misconduct may be admissible for the purpose of showing that an action was intentional and not mistaken or accidental. Appellees insist that, once Young had stated that he grabbed the chain out of Washington's hand by "reflex," and that he pointed his finger in Washington's face by accident, evidence of Young's lengthy history of discipline at Stateville, for assaults as well as rule violations, was relevant to refute those statements by showing an absence of accident in that prior misconduct.

Young himself "opened the door" to appellees' use of Young's prison discipline record as a valid evidentiary method of contradicting his explanations of his "unintentional" actions. "Opening the door" is a risk each party assumes when planning its trial strategy and presenting testimony at trial. It is the delicate duty of the trial court to exercise its discretion in admitting evidence because previous testimony "opened the door." *United States v. Draiman,* 784 F.2d 248, 255 (7th Cir.1986). In this case, appellant himself asserted his "accidental" or "reflexive" movements, which appellees were permitted to contradict. Even in circumstances in which "the door was opened a little and a lot [of evidence] got through," this court has found that the trial judge did not abuse his discretion. *Id.* In these circumstances, the seriousness of both the direct and rebuttal testimony was well balanced so that evidence specifically refuting appellant's assertions was admitted for its probative effect.

Courts have admitted evidence of similar prior bad acts, as rebuttal to the witness's testimony or impeachment of his credibility, to show that the present act probably was not an accident. *See, e.g., United States v. Hillsberg,* 812 F.2d 328, 334 (7th Cir.1987); *United States v. Pelusio,* 725 F.2d 161, 168 (2d Cir.1983); *United States v. Tsinnijinnie,* 601 F.2d 1035, 1040 (9th Cir.1979), *cert. denied,* 445 U.S. 966, 100 S.Ct. 1657, 64 L.Ed.2d 242 (1980). Such evidence is admissible when it is material and there exists a dispute about it. *United States v. Semak,* 536 F.2d 1142, 1144 (6th Cir.1976).

This court has recently affirmed a district court's inclusion of evidence of two prior firings of a gun because it "tended to prove that he again fired it intentionally, that the discharge was not accidental or inadvertent." *United States v. Hillsberg,* 812 F.2d at 334. In our case, Young's prior similar misconduct (as indicated in disciplinary reports that included many assaults on officers) tends to negate the possibility that he put his finger in the officer's face by accident or grabbed the chain out of his hand by reflex. Such evidence is clearly relevant to contradict Young's defense of lack of intent. *See United States v. Brunson,* 657 F.2d at 115.

The *Shackleford* case, in which we laid down guidelines for admitting 404(b) evidence, considered a crime that did not include the element of specific intent.[5] In such a situation, once one party raises the issue of lack of intent or of mistake or accident, the other party can produce evidence of intent to rebut that position. 738 F.2d at 781. Young has done just that by describing his actions as accidental and reflexive. Evidence of his prior misconduct

---

5. *Shackleford* considered the offense of attempting to collect a debt by use of extortionate means in violation of Title 18, U.S.C. § 894(a) (1976), a crime that does not include an element of specific intent. We noted therein the distinction between situations in which specific intent is an essential element of the crime and in which it is not. In the former case, the government could introduce evidence of prior similar bad acts or misconduct to establish intent even if the defendant had not raised the issue. 738 F.2d at 781. But in the latter situation, "intent must be more than a formal issue," and the government needed to produce evidence of intent only if the defendant raised lack of intent as a defense. *Id.*

tends to indicate that his present actions were not accidental. Such evidence is therefore admissible if it meets the four-part *Shackleford* test.

Evidence of Young's prior disciplinary record is directed toward establishing intent and lack of accident in his actions at issue, and not toward establishing a propensity to commit violent acts. His history indicates many frequent violations and assaults for which he was punished; although specific behavior was not described to the jury, the record clearly and convincingly shows that his other actions were similar enough and close enough in time to be relevant to the matter in issue. Because the district judge did not permit the record to be admitted in evidence, and only allowed general questions about his prior assaults, the danger of unfair prejudice was minimized and the probative value of the evidence dominated what risk of prejudice there might have been. We find that the questions to Young on cross-examination to establish the lack of accident or reflex in his actions were directly probative of his intent and satisfied the *Shackleford* test. Thus, that evidence was admissible under Rule 404(b).

Young's prior disciplinary record was also relevant to establish the excessiveness of the force that Young alleged was used against him. It is not disputed that there was a fight between Young and Washington, and that Young received cuts as a result. However, Young was not hospitalized, and did not complain of the severity of his injuries; the injuries alone were not a clear indication of Washington's use of excessive force. Once Young raised such allegations, the defendants could properly introduce evidence to explain the need for force and to show why the officer's actions were not excessive.

This court recently decided a § 1983 case acknowledged by both parties to be very similar to this one. In *West v. Love*, 776 F.2d 170 (7th Cir.1985), the prisoner West sued correctional officer Love for injuries suffered in a fight in the segregation unit of the prison as the prisoner was being escorted back from the prison yard to his cell. We affirmed the district court's admission of character evidence as relevant to the issue of excessive force. 776 F.2d at 176.

The district court in *West* allowed evidence that Stateville Penitentiary was a maximum security prison; that the segregation unit was reserved for inmates who had demonstrated a propensity for violent behavior; and that West was housed in the segregation unit because of his history of violent behavior. The court found such evidence relevant both to the issue of the reasonableness of the force used against West under the circumstances and as a rebuttal to the inference that West had been unfairly treated. 776 F.2d at 174–75. In concluding that the trial court did not abuse its discretion, we stated that the officers' assessment of the circumstances and of the danger involved was indicative of the reasonableness of their actions and their good faith.

> Correctional officers are not required to take excessive personal risks with inmates classified as violent. That defendants were dealing with an inmate housed in the special confinement unit rather than with a trusty housed on a prison farm is clearly relevant to their assessment of the danger posed and the amount of reasonable force to be applied. This evidence bearing on defendants' state of mind was admissible under rule 404(b).

*Id.* at 174.

Appellant has urged us to follow the First Circuit's decision, *Lataille v. Ponte*, 754 F.2d 33 (1st Cir.1985), because the facts herein are more similar to those in *Lataille*.[6] We disagree. In *Lataille*, defense counsel referred to past violent acts of the prisoner in his opening and closing statements and was allowed to enter evidence of the prisoner's sixty previous disciplinary actions. The First Circuit found such evidence clearly inadmissible under

---

6. Young suggests that he, like Lataille, was not well acquainted with the corrections officer; that he did not bring into evidence the issue of his placement in the segregation unit on direct

examination; that he did not testify that his treatment had been unfair; and that he admitted his disciplinary record for prison violations only on cross-examination.

Rule 404 because it was offered to show "that Lataille was a violent person and that he, therefore, must have been the aggressor and precipitated the assault." 754 F.2d at 37. In contrast, the district court conducting the *West* trial had narrowly limited admission of evidence to avoid undue prejudice to the prisoner. *West v. Love*, 776 F.2d at 175.

In this case, the district court also strictly limited admissibility of evidence of Young's past disciplines to avoid undue prejudice. No specific misconduct was reported. The record of his disciplinary history was excluded. The district court monitored evidence to avoid arousing the emotions of the jury. The testimony that was allowed was directly relevant to the intent of Young's actions and the excessiveness of force that Young alleged. Young's history of assaults against officers tends to bear on the reasonableness of Officer Washington's response to Young when Young poked a finger in Washington's face and grabbed the chain.

We hold that the district court exercised "principled discretion" in balancing the probative value and unfair prejudice of prior bad acts evidence. The court's limited inclusion of evidence of Young's disciplinary record satisfies the *Shackleford* test and is admissible as evidence of "absence of accident" under Rule 404(b). Accordingly, we affirm the ruling of the district court.